UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| CHARGING BISON, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION NO. |
| VS. ) | |
| ) | 3:16-CV-3479-G |
| INTERSTATE BATTERY ) | |
| FRANCHISING & DEVELOPMENT, ) | |
| INC., ) | |
| ) | |
| Defendant. ) | |

### MEMORANDUM OPINION AND ORDER

Before the court is the motion of the plaintiff Charging Bison, LLC ("Charging Bison") to stay the proceeding between the parties currently pending before JAMS, an arbitration service. *See generally* Plaintiff's Motion for Stay of Pending JAMS Arbitration ("Motion") (docket entry 12).

### I. BACKGROUND

On February 25, 2013, Charging Bison and the defendant Interstate Battery Franchising & Development, Inc. ("Interstate Battery") entered into a franchise agreement for an Interstate All Battery Center franchise in Cheyenne, Wyoming.

Motion ¶ 1; *see also* Interstate All Battery Center Franchise Agreement ("Agreement") (docket entry 13). Charging Bison still operates this battery center, and the franchise agreement is still in effect. Defendant's Response to Plaintiff's Motion for Stay of Pending JAMS Arbitration ("Response") at 2 (docket entry 14). The franchise agreement included, in pertinent part, the following provisions.

Paragraph 34:

> **Effectiveness and Governing Law**. . . . This Agreement and any claim or controversy arising out of, or relating to, rights and obligations of the parties under this Agreement, and any other claim or controversy between the parties, shall be governed by, interpreted and construed under, and determined pursuant to the laws of the State of Texas, without regard to Texas conflict of laws principles.

Paragraph 35.A. ("¶ 35A"):

> Claims Subject to Arbitration. During the term of this Agreement, any claim or controversy between the parties hereto arising out of or related to this Agreement, the relationship between Franchisor and Franchisee, or Franchisee's operation of the franchised business shall be submitted to arbitration in accordance with Section 35.B. below, unless excepted from mandatory arbitration by Section 35.C. . . .

Paragraph 35.B. ("¶ 35B"):

> Rules Applicable in Arbitration. Any arbitration between the parties shall be conducted pursuant to the then-

>   prevailing Comprehensive Arbitration Rules and
>   Procedures of . . . JAMS . . . .*
>
>>   (2) . . . Section 34 above shall apply in the
>>   arbitration proceeding; <u>provided, however</u>,
>>   that neither the Texas Arbitration Act nor
>>   Texas rules of arbitration shall apply in or to
>>   any arbitration proceeding governed by this
>>   Section 35.

Paragraph 35.C.(1) ("¶ 35C"):

>   <u>Claims Not Subject to Arbitration</u>. The following claims,
>   disputes, and actions shall not be subject to mandatory
>   arbitration under Section 35.A. above . . . any claim or
>   dispute involving the propriety of any termination of this
>   Agreement . . . .

Agreement at 44-46.

Charging Bison contends that it entered into the franchise agreement after receipt and consideration of Interstate Battery's Franchise Disclosure Document ("the FDD"), and that it relied upon the FDD in its decision to proceed with the purchase of the Interstate Battery franchise. Motion ¶ 2. Thereafter, "[a]fter several years of operating the Franchise, Charging Bison discovered that the FDD contained materially misleading statements, skewed figures, and misrepresentations of the financial strength and revenues of the then existing Interstate Battery franchises." *Id.* ¶ 3. A dispute then arose between Charging Bison and Interstate Battery regarding

---

\*    *See* JAMS Comprehensive Arbitration Rules & Procedures ("JAMS Rules") (docket entry 14-1).

Charging Bison's right to terminate the franchise agreement due to misrepresentations in the FDD and on other grounds and whether their dispute falls within the arbitration provisions of the franchise agreement. *Id.* ¶ 4.

Pursuant to the franchise agreement, on September 27, 2016, Interstate Battery filed a demand for arbitration with JAMS. Interstate Battery sought, in part, a declaration that Charging Bison has no basis to terminate the franchise agreement. *Id.* The following issues are to be decided in the pending arbitration.

> (1) Charging Bison cannot establish that Interstate Battery fraudulently induced the parties' relationship through misrepresentations in its Franchise Disclosure Document; (2) recently announced system changes do not constitute failure of consideration, constructive abandonment, or anticipatory breach of the Franchise Agreement; (3) Interstate Battery has not breached the implied covenant of good faith and fair dealing; and (4) because its accusations are groundless, Charging Bison has no basis to seek to terminate or declare void the Franchise Agreement.

Response at 3.

Charging Bison filed objections with JAMS and argued that the franchise agreement "specifically carve[d] out from arbitration any claims or disputes involving the propriety of any termination of the Franchise Agreement." Motion ¶ 5. Interstate Battery responded that "the relevant arbitration exception set forth in the Franchise Agreement was strictly limited 'to reviews of whether a decision to terminate the parties' specific Franchise Agreement was correct and proper.'" *Id.*

JAMS rejected Charging Bison's contentions and refused to stay further

arbitration proceedings. *Id.* ¶ 6. Thus, the arbitration proceeding is currently pending before JAMS, but an arbitration date has not been set. *Id.* ¶ 4.

As a result of JAMS's ruling, on November 29, 2016, Charging Bison filed suit against Interstate Battery in the 191st Judicial District Court of Dallas County, Texas, seeking relief pursuant to pursuant to Texas Civil Practice & Remedies Code § 171.023(c) ("§ 171.023(c)"). Defendant's Notice of Removal ("Notice of Removal") ¶ 2 (docket entry 1). Section 171.023(c) is part of the Texas General Arbitration Act ("TGAA"), TEXAS CIVIL PRACTICE & REMEDIES CODE § 171.001, *et seq.*; Response at 9. Under § 171.023(c), the court shall stay the arbitration if it finds for the party moving for the stay or order the parties to arbitrate if the court finds for the party opposing the stay. § 171.023(c). Interstate Battery argues that Texas law does not apply under the express language of ¶ 35B. Response at 9.

On December 21, 2016, Interstate Battery removed the case to this court. *See generally* Notice of Removal. Charging Bison seeks to determine its right to terminate the franchise agreement and to stay the arbitration proceeding between the parties currently pending before JAMS. Motion ¶ 10. Charging Bison avers that its "claims are . . . for a legal determination concerning the 'propriety' of Charging Bison's anticipatory 'termination' of the franchise agreement as a result of fraud." Plaintiff's Reply to Defendant's Opposition to Motion for Stay ("Reply") (docket entry 16) ¶ 21. Specifically, Charging Bison classifies ¶ 35C as a narrow exception to the broad

scope of ¶ 35A. *Id.* ¶¶ 14, 15. According to Charging Bison, "[p]er the specific and unambiguous terms of the franchise agreement, the parties agreed that certain disputes -- including the validity of grounds to terminate the agreement -- would not be subject to arbitration." *Id.* ¶ 5.

Interstate Battery, on the other hand, contends that Charging Bison and Interstate Battery agreed to arbitrate all claims and disputes arising out of or relating to their franchise agreement and relationship, and that disputes between the parties all squarely fall into the scope of the arbitration clause (*i.e.*, the narrow exception does not apply). Response at 1. Specifically, Interstate Battery asserts that "the exception for claims involving the 'propriety of any termination of this [Franchise] Agreement' does not apply because the Franchise Agreement has not been terminated, the 'propriety' of an actual termination is not at issue, and the parties' real dispute regards whether Charging Bison was fraudulently induced into signing the Franchise Agreement based on alleged misstatements in the FDD -- a dispute that arises out of and relates to the parties' relationship and Franchise Agreement." *Id.* at 10. Thus, Interstate Battery argues, the court should stay this case while the dispute is arbitrated before JAMS. *Id.*

## II. ANALYSIS

Generally, a determination of whether the parties agreed to arbitrate their dispute is made by applying the federal substantive law of arbitrability, "applicable to

any arbitration agreement within the coverage of the [Federal Arbitration] Act." *Moses H. Cone Memorial Hospital v. Mercury Construction Corporation*, 460 U.S. 1, 24 (1983). Here, however, the parties disagree as to whether their dispute falls under an exception to the franchise agreement's general arbitration provision; if that exception applies, Charging Bison contends that the dispute might be subject to arbitration in accordance with the TGAA. The choice-of-law issue is of no consequence because even if it is assumed *arguendo* that the TGAA is applicable, courts -- when construing arbitration agreements in accordance with state law -- should give due regard to the strong federal policy favoring enforcement of such clauses. See *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University*, 489 U.S. 468, 475-76 (1989).

Both federal and Texas law strongly favor arbitration. See *Moses*, 460 U.S. at 24-25; *Cantella & Company, Inc. v. Goodwin*, 924 S.W.2d 943, 944 (Tex. 1996) (per curiam). Indeed, the Supreme Court has emphasized that the FAA was enacted "to overrule the judiciary's longstanding refusal to enforce agreements to arbitrate." *Volt*, 489 U.S. at 474 (quoting *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 219-20 (1985)). Consequently, the FAA, by its terms, "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter*, 470 U.S. at 218 (emphasis in the original); see also

*Houston General Insurance Company v. Realex Group*, N. V., 776 F.2d 514, 516 (5th Cir. 1985) (noting the history of the Fifth Circuit favoring arbitration "unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation that would cover the dispute at issue . . . .").

Whether a contract's arbitration clause requires arbitration of a given dispute is a matter of contract interpretation, which is to be performed by the court rather than an arbitrator, unless the parties "clearly and unmistakably provide otherwise." See *AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 649 (1986). Citing JAMS Rule 11(b) under which "[t]he arbitrator has the authority to determine . . . arbitrability issues as a preliminary matter[,]" Interstate Battery argues that the parties delegated arbitrability to JAMS. Response at 5. For its part, Charging Bison contends that the court should decide the issue of arbitrability. Motion ¶ 15. The court elects to determine arbitrability by examination of the franchise agreement. Thus, if this court finds that Charging Bison agreed to arbitrate the type of claim it asserts in this case, arbitration of that claim is warranted.

When addressing questions of arbitrability, whether the parties have agreed to arbitrate a particular dispute, all doubts concerning the scope of the arbitration clause in a contract should resolved in favor of arbitration. See *United Steelworkers of America v. Warrior & Gulf Navigation Company*, 363 U.S. 574, 582-83 (1960); see also *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 945 (1995) ("[G]iven the law's

permissive policies in respect to arbitration, . . . one can understand why the law would insist upon clarity before concluding that the parties did *not* want to arbitrate a related matter.") (emphasis in original). In considering whether a dispute is subject to binding arbitration, the court must determine whether there is a valid agreement to arbitrate and whether the dispute in question falls within the scope of the arbitration agreement. *Dealer Computer Services, Inc. v. Old Colony Motors, Inc.*, 588 F.3d 884, 886-87 (5th Cir. 2009).

The court finds that the plain meaning of ¶ 35C does not cover anticipatory terminations of the franchise agreement. Thus, all of the plaintiffs' claims against Interstate Battery fall within the scope of arbitrable claims under ¶ 35A of the franchise agreement. Because Charging Bison entered into an agreement to arbitrate claims of the type it asserts against Interstate Battery in this case, and the present dispute falls within the franchise agreement's arbitration clause, resolution of this dispute is properly before JAMS. Accordingly, Charging Bison's motion to stay the arbitration proceeding between the parties currently pending before JAMS is denied.

### III. CONCLUSION

For the reasons discussed, the plaintiff's motion for a stay of the pending JAMS arbitration is **DENIED**.

In an effort to manage this court's docket more efficiently, this case will be **ADMINISTRATIVELY CLOSED**. If further proceedings in this case are needed,

the case may be reopened, without prejudice, upon the motion of either party. The right to reopen shall continue until 30 days after the issuance of the arbitrator's decision.

**SO ORDERED**.

April 7, 2017.

*A. Joe Fish*
**A. JOE FISH**
**Senior United States District Judge**